The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
*********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21, Agreement for Compensation for Disability, approved by the Industrial Commission on 11 January 1990, an Agreement Regarding Payment of Permanent Partial Disability, approved by the Industrial Commission on 29 July 1992, a Pre-Trial Agreement and at the hearing before as:
STIPULATIONS
1. On 31 May 1989, the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. The Travelers Insurance Company was the workers compensation insurance carrier on the risk.
4. Plaintiff's average weekly wage was $572.00, which yields a compensation rate of $376.00.
5. As a result of her injury on 31 May 1989, plaintiff was temporarily totally disabled and received temporary total disability compensation from 14 November 1989 through 3 January 1990 and from 17 August 1990 through 17 October 1990.
6. On 1 March 1991, plaintiff reached maximum medical improvement. On that date, plaintiff had an eleven percent permanent partial impairment of her right thumb for which she received permanent partial disability compensation at the rate of $376.00 for 8.25 weeks.
7. Plaintiff continued working for defendant-employer through 21 June 1991. After 21 June 1991, plaintiff did not return to work for defendant-employer until 19 August 1991. Plaintiff has not worked for defendant-employer since 19 August 1991.
8. On 27 May 1992, defendant-employer agreed to make available to plaintiff the job of roving bobbin stripper, subject to Dr. Jasmine's approval of that position for plaintiff. Plaintiff agreed to maintain the standards associated with the roving bobbin stripper job and that the position would not be a first shift job.
9. On 27 May 1992, the parties further agreed that if plaintiff was unable to perform the roving bobbin stripper job, defendants would provide plaintiff with vocational rehabilitation services for so long as plaintiff made good faith efforts to obtain employment and to cooperate with the vocational rehabilitation specialist.
*********
Based upon all of the competent evidence of record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Hedrick, plaintiff was 58 years old. She had received no education or training since completing the ninth grade. Plaintiff began working for defendant-employer in 1968 and continued in that employment through June 1991.
2. On 31 May 1989, plaintiff was employed by defendant-employer as a yarn packer. The duties of this position were to pack spools of yarn into boxes.
3. As a result of her employment, plaintiff developed a right trigger thumb and deQuervain's tenosynovitis in her right wrist. Plaintiff underwent surgery for her right trigger thumb on 15 November 1989. The surgery was successful. On 20 August 1990, plaintiff underwent a surgical release for her deQuervain's tenosynovitis. This surgery was also successful, however, plaintiff continued to experience pain in her wrist which persisted through the date of the hearing in this matter.
4. Following her surgeries, plaintiff returned to her usual position as a yarn packer. Plaintiff continued working in this position until 21 June 1991. After that date, plaintiff was unable to perform the duties of a yarn packer due to right thumb and wrist pain.
5. The parties entered into an agreement dated May 27, 1992 and approved by the Industrial Commission on July 29, 1992 wherein Defendant agreed to make the roving bobbin stripper job available to plaintiff. In the event Plaintiff was unable to perform this job, defendant agreed to make vocational rehabilitative services available to plaintiff.
6. Plaintiff was unable to perform the bobbin stripper job due to the pain in her wrist and thumb. With the assistance of a vocational expert, plaintiff attempted to locate alternative employment either through personal interviews or telephone contacts. All of her efforts to locate a job were unsuccessful. She contacted 76 prospective employers to no avail.
7. Plaintiff testified on 10 August 1995 that the condition of her wrist and thumb had gotten worse in the year before the hearing in that any use of her hand would cause it to go to "sleep". While the pain and numbness had started in 1992 or 1993, it had gotten substantially worse in 1994 and 1995. She can do limited lifting with her right hand and is unable to perform most of her house work. Most of her pain and numbness was in her right arm from the wrist to the elbow.
8. Dr. Anthony DeFranzo initially examined Plaintiff in March 15, 1994. At that time, she presented a history of recurring symptoms of right deQuerviain's disease and numbness and tingling in the median nerve distribution. Dr. DeFranzo also saw Plaintiff on March 22, 1994, at which time she was complaining of numbness and tingling in her right wrist.
9. Dr. Mark Jasmine testified that he started treating Plaintiff in 1989 for a trigger thumb on her right hand. He performed surgery on November 15, 1989 for her trigger thumb and on August 20, 1990 for her deQuerviain's tendinitis. In Dr. Jasmine's opinion, the tendinitis could be aggravated by continued use of the wrist.
10. Dr. Jasmine rated Plaintiff on March 1, 1991 as having an eleven per cent (11%) permanent partial disability of her right thumb and this rating took into account all of the problems relating to her March 31, 1989 injury.
11. On July 29, 1992, the Industrial Commission approved an "Agreement Regarding Payment of Permanent Partial Disability." Pursuant to this agreement, plaintiff was paid permanent partial disability compensation for the (11%) permanent partial impairment to her right thumb. At the time of the approval of this agreement, plaintiff had not earned wages in any employment since she last worked on June 21, 1991, with the exception of the hours worked on August 19, 1991, when plaintiff unsuccessfully attempted to return to work.
12. A Form 21 agreement accepting liability for this claim had previously been approved by the Commission on January 11, 1990. At the time permanent partial disability compensation was paid pursuant to the July 29, 1992 agreement, the parties knew that plaintiff was not working, but it was expected that she had some wage earning capacity. Defendants agreed to offer the roving bobbin stripper job to plaintiff and that if plaintiff could not do that job, vocational rehabilitation assistance would be provided to find plaintiff suitable work.
13. Following plaintiff's attempt to perform the Bobbin Stripper job, she cooperated with Glynnis Holmes, a vocational rehabilitation specialist in attempting to locate employment. Plaintiff made good faith efforts to cooperate with vocational rehabilitation and locate suitable employment. In fact, plaintiff contacted (76) prospective employers in an effort to find work. While many of the contacts were by telephone, some of them were personal interviews.
14. Dr. Jasmine saw Plaintiff on April 7, 1992. At that time she was complaining of pain in her wrist as well as numbness and tingling in her right arm. On October 4, 1993 Plaintiff came to Dr. Jasmine complaining of dorsal compartment pain and a burning type pain from the upper arm radiating down her forearm.
15. As of 10 August 1995, plaintiff could lift no more than one to two pounds with her right arm. She is unable to do sweeping or vacuuming. If she uses her right hand it hurts.
16. Based upon the credible evidence of record, the Full Commission finds that plaintiff has sustained a substantial change of her physical condition which has resulted in an incapacity to earn wages since the Industrial Commission's approval of the parties' Agreement Regarding Payment of Permanent Partial Disability Compensation on 29 July 1992.
17. As the result of plaintiff's change of condition for the worse, she has been unable to earn wages in her former employment with defendant-employer or in any other employment since August 1, 1992 and continuing through the present.
*********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The Industrial Commission has the statutory authority to review any final award and award additional compensation if there has been a substantial change of condition. G.S. § 97-47.
2. At the time of the initial award, 29 July 1992, plaintiff's only physical impairment was a eleven per cent (11%) permanent partial disability of the right thumb. G.S. § 97-2(6); G.S. § 97-31. Plaintiff has sustained a substantial change of condition for the worse resulting in a diminished capacity to earn wages since the approval of the parties' Agreement Regarding Payment of Permanent Partial Disability Compensation on 29 July 1992. G.S. § 97-47
3. As the result of her change of condition, plaintiff is entitled to have defendants pay temporary total disability compensation at the rate of $376.00 per week from August 1, 1992 and continuing through the present. G.S. § 97-29.
4. As the result of plaintiff's change of condition for the worse, plaintiff is entitled to have defendants pay for all reasonable medical expenses incurred or to be incurred. G.S. §97-25.
*********
Based on the foregoing findings of fact and conclusion of law the Full Commission reverses the holding of Deputy Commissioner Hedrick and enters the following:
AWARD
1. Defendant shall pay plaintiff temporary total disability compensation benefits at the rate of $376.00 per week from August 1, 1992 to the date of this Award and continuing thereafter until further order of the Commission, less the attorney fee hereinafter provided.
2. The compensation payments that have already accrued shall be paid in a lump sum, less the attorney fee hereinafter provided. Interest on the unpaid amount at the rate of 8% per year shall be payable from 10 August 1995, the date of the initial hearing herein, until paid. The entire amount of such interest shall be payable to plaintiff.
3. Defendant shall pay all unpaid and future medical expense resulting from said illnesses when the same have been approved according to procedures established by the Industrial Commission.
4. An attorney fee of twenty-five percent of the compensation herein allowed is hereby approved and awarded to plaintiff's attorney for his services to the plaintiff. With respect to compensation that has already accrued, the attorney fee is to be deducted and paid directly to said attorney. Thereafter, defendant shall pay every fourth compensation payment directly to said attorney.
5. Defendant shall pay the costs, including a $200 expert witness fee to Dr. Jasmine.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ____________ BERNADINE S. BALLANCE COMMISSIONER
S/ ____________ COY M. VANCE COMMISSIONER